[No. 30881. Department Two. October 22, 1949.]

*In the Matter of the Estate of* ELIZABETH W. SACKMAN, *Deceased.*

HAROLD S. PHILLIPS, *Appellant,* v. WILLIAM RENTON PHILLIPS, SR., *et al., Respondents.*[1]

*Heideman, Flanagan & Russell,* for appellant.

*Evans, McLaren, Lane, Powell & Beeks,* for respondents.

[1] Reported in 210 P. (2d) 682.

Robinson, J.—On December 16, 1948, Harold S. Phillips filed an amended petition and complaint in the above-entitled matter, stating, in the introductory paragraph, that he did so both individually and as an executor of Mrs. Sackman's estate. In that dual capacity, he alleged (1) that Elizabeth W. Sackman, a resident of King county, Washington, died on December 21, 1914; (2) that a petition for probate of her last will was filed on January 5, 1915, and on that day duly admitted to probate; (3) that he, the plaintiff, a grandson of the deceased, his father, William Renton Phillips, and his uncle, Joseph W. Phillips, were named as executors in the will; (4) that his father, William Renton Phillips, being a resident of Oregon, declined to serve, but that he, the plaintiff, and his uncle, Joseph W. Phillips, were appointed and confirmed as coexecutors of the will in the decree entered admitting the will to probate on January 5, 1915, and that they duly qualified as executors on January 8, 1915; and (5) that he, the plaintiff, was a legatee under his grandmother's will. We quote from a copy of the will attached to, and by reference made a part of, the petition and complaint:

"Fourth: I hereby give and bequeath to my grand-son, Harold Sackman Phillips, the sum of Five Thousand Dollars, $5,000.00) and give and devise to him my undivided one-half of the Green Lake lots owned by me."

Plaintiff further alleged (1) that, at the time (January 8, 1915), he qualified as coexecutor of the Elizabeth Sackman estate, he was but thirty-one years of age and had implicit trust and confidence in his father and his coexecutor uncle; (2) that, unknown to him, his father and uncle, shortly after the probate of his grandmother's will, entered into a conspiracy to cheat and defraud him out of his five-thousand-dollar legacy, and exclude him from any participation in his grandmother's estate or from exercising his authority as an executor thereof by having his coexecutor uncle arrogate to himself the control of the Sackman estate so as to absorb all of the assets for plaintiff's father and himself, to the exclusion of the plaintiff, and cheat him out

of his legacy, and said conspiracy and illegal and fraudulent agreement continued to operate sufficiently long to dissipate and dispose of all of the assets of the Sackman estate so as to prevent the plaintiff from receiving his legacy, and that said conspiracy and acts also included the legacies of other grandsons and granddaughters of the deceased, mentioned in the grandmother's will, who were likewise cheated and defrauded of their legacies.

It is further alleged that no decree of solvency or decree directing the estate to be administered as a nonintervention will was entered, but that his uncle, Joseph W. Phillips, without proper orders of the court and without the consent of his coexecutor, the plaintiff, arrogated to himself the sole authority to administer the estate, and that said estate has never been properly and lawfully administered, nor its property properly or lawfully disposed of; and further alleged that, among the assets of the estate were a number of valuable diamond rings, and other diamond and emerald jewelry, which were not inventoried in the estate, but were kept by his father and uncle, and all of these are now in the possession of certain of the younger members of their families.

Plaintiff further alleged that two certain parcels of real estate, the description of which will not here be given, were owned by the deceased, and that parcel (1), described in the complaint, was deeded by his father and uncle to certain individuals on September 28, 1920, by instruments not purporting to be executed by the executors and without the approval of the probate court, and has been mortgaged by the grantees to one of the defendants and sold to another, and it is contended that the mortgagee and grantees received no proper and legal interest therein, all of which they knew, or should have known, from the probate record. As to the second parcel of real estate, plaintiff alleged that his father attempted to convey an interest therein to Joseph W. Phillips, his coexecutor, who, in turn, on May 15, 1925, illegally attempted to transfer it to Mission Amusement Company, a corporation, which, on May 18, 1926, attempted

to convey that property to Pioneer Securities Company, a corporation, but that the attempted transfers were not made by any executor or executors of the estate and were wholly illegal, void, and of no effect, and the property is still an asset of the estate and subject to administration therein, and available for the payment of the legacies granted in Mrs. Sackman's will.

Apparently keeping the statute of limitations in mind, plaintiff further alleged:

"That due to the family relationship between the plain-· tiff and his said father and uncle, together with the wives and children of both, and due to the fact that all of the same concealed the true facts from plaintiff, that plaintiff first had notice of facts from which the said conspiracy, fraud and illegal disposition of said assets should have been discovered, and first learned of the said conspiracy, fraud and illegal disposition within the past year and a half."

Plaintiff prayed (1) that the estate be adjudged unadministered, and that it be administered as required by law; (2) that the assets of the estate be marshaled and collected; and (3) that, in the event the property of the estate cannot be taken into possession of the court or liens imposed upon it, he have a personal judgment against his father, William Renton Phillips, Sr., for five thousand dollars, with interest from June 21, 1916, and for such other and further relief as may be meet and equitable.

No defendants named in the petition answered, but the principal defendants demurred on two grounds, (1) that it did not state facts sufficient to constitute a cause of action; and (2) that the action was not commenced within the time limited by law. The demurrer was sustained on both grounds by an order of the superior court entered on September 16, 1948. On October 28, 1948, the superior court entered the order from which this appeal was taken. The order read as follows:

"This matter having come on regularly for hearing on the demurrer of William Renton Phillips, Sr., Marion Phillips, Agnes E. Harris, William R. Phillips, Jr., Mary E. Phillips and Elizabeth P. Gifford, defendants, to plaintiff's

amended petition and complaint filed herein and the court having heard all the arguments thereon and having heretofore, on the 16th day of September, 1948, entered an order sustaining said demurrer, and the plaintiff having elected to stand upon his amended petition and complaint and having refused to plead further,

"Now THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that the above entitled action be and the same is hereby dismissed with prejudice and with costs in favor of said defendants hereinabove named."

It is plainly apparent, from the foregoing digest of plaintiff's complaint, that, if the Elizabeth Sackman estate has been mismanaged and its assets dissipated, it was through his own fault; for, he himself alleges that he qualified as one of the executors of her will. At that time (January 8, 1915), he was thirty-one years of age. According to his own story, as told at length in his complaint, the only thing he ever did in connection with the estate was to take his oath as an executor thereof. He then stood idly by while his coexecutor uncle, Joseph W. Phillips, dissipated the assets of the estate; but, in his complaint, he seeks to avoid the statute of limitations by alleging that he first had notice of the facts, from which the alleged fraud of his coexecutor should have been discovered, within the last year and one-half previous to the institution of this action.

The demurrer did not admit the truth of that allegation. An executor must be charged with knowledge of what is going on in an estate which he has sworn to administer. Furthermore, plaintiff was bound to know facts appearing in the public records. He was bound to take notice of the transfers of the real estate which, he alleges, were made in 1920 and 1925.

The plaintiff is, at least in his individual capacity, seeking damages on the ground of fraud. He, therefore, strongly relies upon subparagraph 4 of § 159, Rem. Rev. Stat. (Sup.) [P.P.C. § 73-11], which section prescribes a three-year limitation for certain actions. Subparagraph 4 reads as follows:

"An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued

until the discovery by the aggrieved party of the facts constituting the fraud. . . ."

In *Noyes v. Parsons*, 104 Wash. 594, 177 Pac. 651, the court said, in part:

"The broad assertion that the statute does not run until the fraud is discovered is not tenable. *The statute begins to run when the fraud should have been discovered, and a clue to the fact which, if followed up diligently, would lead to discovery, is in law equivalent to discovery. Deering v. Holcomb, supra* [26 Wash. 588, 67 Pac. 240, 561]. A general allegation of ignorance at one time and knowledge at another is of no effect. *Hardt v. Heidweyer*, 152 U. S. 547. In order to excuse a want of knowledge of the fraud, a pleading must set forth what were the impediments to an earlier prosecution of the claim, how the pleader came to be so long ignorant of his rights, the means, if any, used by the opposing party fraudulently to keep him in ignorance, or how and when he first obtained knowledge of the matter alleged in the pleading. *Pearsall v. Smith*, 149 U. S. 231." (Italics ours.)

And the following further statement in that opinion we may quite appropriately adopt in this:

"The allegations contained in the complaint negative any excusable want of knowledge of any of the facts necessary to avoid the bar of the statute of limitations on the ground of fraud, and, on the other hand, demonstrate that all the substantive grounds of fraud were known at once, and any other fact necessary to have been known was not actively concealed, was not of a nature to conceal itself, and could have been known by the parties in interest by using ordinary diligence. This is sufficient to start the statute in question running, and justified the sustaining of the demurrer herein."

Appellant seems strangely unaware of the fact that, if all of the allegations concerning the misdeeds of his uncle, Joseph W. Phillips, are true, he, being himself an executor, was equally guilty. In attempting to state a case in his petition and amended complaint, he has, in effect, stated a case against himself. It is said, in 21 Am. Jur. 802, § 751:

"The general rule is that several coadministrators or coexecutors are, in law, only one person representing the testator, and acts done by one in reference to the administration of the testator's goods are deemed the acts of all, inasmuch as they have a joint and entire authority over the whole property belonging to the estate. It has been held that an agreement between executors or administrators that one alone shall manage the estate is void. Each represents the estate, and, in the absence of any contrary testamentary or statutory provision, the rights of each are fully equal to those of the others in regard to receiving, holding, and disbursing the assets of the estate. The broad principle has been laid down that acts done by any one of them in regard to the possession, control, or disposition of the estate are deemed the acts of all."

The respondents have called our attention to an interesting application of this principle by the supreme court of the United States in *Edmonds v. Crenshaw*, 39 U. S. (14 Pet.) 166, 10 L. Ed. 402. In that case, a coexecutor collected money belonging to an estate and trustingly turned it over to his coexecutor who afterwards became insolvent without having accounted for the money. Meanwhile, the executor who had made the collection and turned the money over to his coexecutor had left the state and paid no further attention to the affairs of the estate. He was sued by the estate for the amount he had collected and turned over to his coexecutor. His defense was that he should not be held liable for the wrongdoing of the other executor, he himself not being personally involved in the misappropriation. The supreme court rejected that contention, saying, in part:

"One executor, having received funds, cannot exonerate himself, and shift the trust to his co-executor, by paying over to him the sums received. Each executor has a right to receive the debts due to the estate, and discharge the debtors; but this rule does not apply as between the executors. They stand upon equal ground, having equal rights, and the same responsibilities. They are not liable to each other, but each is liable to the *cestuis que trust*, to the full extent of the funds he receives. *Douglass v. Satterlee*, 11 Johns. 16; *Fairfax's Executors v. Fairfax*, 5 Cranch 19."

■■ Plaintiff alleged that there was a fiduciary relation between himself and the alleged conspirators, his father and uncle; but no facts are alleged to establish the allegation which, therefore, stands as a mere conclusion of law, not admitted by the demurrer. The mere fact that one may have confidence in a relative or relatives does not in and of itself establish a fiduciary relation, and

"The mere fact that one has confidence in another is not sufficient to excuse a lack of diligence in investigating to discover fraud." 37 C. J. 948, § 317.

See, also, *Cornell v. Edsen,* 78 Wash. 662, 139 Pac. 602, 51 L. R. A. (N.S.) 279, and *Reeves v. John Davis & Company,* 164 Wash. 287, 2 P. (2d) 732.

In our opinion, the superior court correctly sustained the demurrer to the plaintiff's amended petition and complaint, and, since the plaintiff, as recited in the order appealed from, refused to plead further, the court properly dismissed the action with prejudice.

The order of dismissal is, therefore, affirmed. It is so ordered.

SIMPSON, C. J., SCHWELLENBACH, and GRADY, JJ., concur.